STOKER, Judge.
The defendant, Anthony Paul Bellard, was indicted by a grand jury for aggravated rape; the charge was later reduced to molestation of a juvenile, a violation of LSA-R.S. 14:81.2. On June 25, 1986 defendant was found guilty by a jury, and on September 3,1986 he was sentenced to five years at hard labor. From this conviction the defendant has appealed, urging three assignments of error. Those assignments of error are as follows:
1) The trial court erred in denying defendant’s motion in limine to rule evidence of medical examination and tests of defendant inadmissible.
2) The trial court erred in allowing Dr. Percy to testify as to medical examinations and tests of defendant.
3) The trial court erred in allowing Opal Hair to testify as to medical examinations and tests of defendant.
FACTS
On September 20, 1985 the Child Protection Agency in Calcasieu Parish was notified by a physician that a five-year-old female child had been diagnosed as having gonorrhea. The Child Protection Agency investigated this report and found evidence of sexual abuse and developed a suspect, the child’s uncle, Anthony P. Bellard, the defendant. The Child Protection Agency made at least three requests to Anthony P. Bellard that he be tested for gonorrhea, but he refused all requests.
On October 22, 1985 the Agency contacted the Calcasieu Parish Sheriff’s office and reported the alleged sexual abuse and the gonorrhea infection diagnosis.
Detective Bob Fry was assigned to the Bellard case by the Sheriff's office and proceeded to investigate the sexual abuse complaint.
Detective Fry testified that after reviewing the Child Protection Agency documents and speaking with the victim, he suspected Anthony P. Bellard was guilty of sexually abusing the victim. Detective Fry then contacted Anthony Bellard and interviewed him concerning the sexual abuse complaint. The defendant was read his Miranda rights and told that the victim had accused him of the sexual abuse. The defendant was not arrested at that time. After the interview, Detective Fry insisted that Bellard submit to medical tests for gonorrhea and made arrangements for Bellard to be tested at the Calcasieu Health Unit. Detective Fry obtained Bellard’s test results by subpoena duces tecum from the Health Unit, and, as Bellard had tested positive, he sought and obtained a warrant for Bellard’s arrest.
The defendant filed a motion in limine in the trial court seeking to suppress the results of the VD test performed on him at the Health Unit, alleging that the examination and test results and related testimonial evidence were inadmissible as privileged communications between a physician and patient under LSA-R.S. 15:476; likewise, the appellant made a timely objection to the introduction of the physician’s and lab technician’s testimony at trial. ASSIGNMENTS OF ERROR 1, 2 and 3
All three assignments of error address the admissibility of the medical test results and the related medical testimony. Therefore, the only issue of law in question is whether or not the medical examination and tests which the appellant submitted to are privileged communications between physician and patient.
The appellant cites relevant authority to support his argument, including LSA-R.S. 15:476, which reads as follows:
“No physician is permitted, whether during or after the termination of his *515 employment as such, unless with his patient’s express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient’s physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient’s physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him.”
The statute was interpreted in State v. Carter, 383 So.2d 357 (La.1980), to require that the communication must be made in confidence to a physician for the purpose of treatment or for diagnosis looking toward treatment.
In Carter, the defendant had voluntarily gone to a charity hospital to seek treatment for gunshot wounds sustained in an armed robbery. He was arrested there and in police custody when the inculpatory statement was made to the physician. The court held that the communication was privileged because the defendant had sought treatment and the communication had been made under circumstances of intended confidentiality.
A case relied on by defendant, State v. Walker, 376 So.2d 92 (La.1979), dealt with the admissibility of test results obtained as result of a medical examination which the defendant voluntarily sought after suffering symptoms of venereal disease while charged with rape and incarcerated in the parish prison. The Supreme Court held that although the examination was made by a prison physician while the defendant was in custody and charged with the rape of a victim, who was known to have contracted gonorrhea as a result thereof, the communication was privileged and the results of the diagnosis were inadmissible. The court found that the examination was sought and submitted to voluntarily for the purpose of medical diagnosis and treatment, the information was given in confidence and was thus privileged absent an express waiver.
In the case before us, the defendant did not voluntarily seek treatment or diagnosis. He went for diagnostic testing at the Health Unit only after repeated requests from personnel of Child Protection and the Sheriff’s department. Child Protection personnel had asked that all of the members of the victim’s household be tested for venereal disease. All of the arrangements for the test were made by the Child Protection personnel, and Detective Fry accompanied defendant to the Health Unit for the tests. At the time that defendant was brought in for testing he had no symptoms of gonorrhea, but had been told that his niece had contracted gonorrhea and that she had named him as her molester. Although the defendant was asymptomatic for gonorrhea, the bacterial culture which was done showed that defendant was in fact infected with gonorrhea. We find that the facts fail to satisfy the second prerequisite to attachment of the physician-patient privilege, that the defendant’s communication was made in confidence. The nature of the involvement of Child Protection and the Sheriff’s department in the disclosure of the possible infection to the defendant and seeing that diagnosis and treatment were obtained, with defendant’s acquiescence, dispute any intended confidentiality now claimed by defendant. Therefore, we conclude that the test results and medical testimony were properly admitted by the trial court. The defendant’s assignments of error are without merit.
Accordingly, the defendant’s conviction and sentence are hereby affirmed.
AFFIRMED.